The Royal Bank of Canada, Demandante y Apelado, *v.* Balle, Demandado y Apelante

No. 3312.—*Visto:* Noviembre 21, 1924. *Resuelto:* Febrero 18, 1925.

Documentos Negociables—Ley Aplicable—Endoso en Blanco Válido—Pago a Persona Distinta del Tenedor.—En las controversias sobre documentos negociables debe aplicarse la ley del lugar de su otorgamiento, del lugar de su cumplimiento o del lugar donde se establece la acción, según los casos. Si se trata del endoso de una letra, que es un contrato independiente de ésta, debe regir la ley del lugar del endoso, y cuando para dicha ley la sola firma del endosante constituye un endoso válido que transmite la propiedad de la letra al tenedor, el pago hecho a otra persona no extingue la obligación del librado que ha aceptado la letra.

Id.—Endoso Ineficaz—Defensa de Pago—Autoridad de la Persona que Recibe el Pago a Nombre de una Corporación.—Cuando un librado que ha aceptado una letra alega en defensa de una acción establecida por el actual tenedor que el endoso sin fecha es ineficaz para transmitir la propiedad y que ya ha pagado a la corporación a cuyo favor la letra era originalmente pagadera, debe demostrar la autoridad de la persona a quien pagó para recibir el pago a nombre de la corporación.

Sentencia de *Charles E. Foote,* J. (Primer Distrito, San Juan), declarando con lugar la demanda, con costas. *Confirmada.*

*J. Martínez Dávila,* abogado del apelante; *Ch. Hartzell* y *F. Ramírez de Arellano,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

The Royal Bank of Canada, una corporación organizada bajo las leyes del Canada, autorizada legalmente para hacer negocios en esta Isla, entabló demanda contra Bernardo Balle, vecino de San Juan, P. R., en cobro de $497.17 procedentes de un giro que copiado a la letra, tal como aparece en la transcripción, es como sigue:

"EDWARD JOLLES COMPANY, Inc. — No. 3496. — Exchange for $497.17 U. S. Currency NEW YORK June 12, 1920.—Ninety days after date of this First of Exchange (Second Unpaid) Pay to the order of OURSELVES Four Hundred Ninety Seven and 17/100 Dollars U. S. Currency.—Payable at the Collecting Bank's Rate for Sight Draft of New York.—Value received, and charge the same to account of

(Signed)      Edward Jolles Company, Inc.,

R. S. Rubinstein, Sec'y.

To Sr. Bernardo Balle,
      San Juan, Porto Rico."

"AL DORSO:—Edward Jolles Company, Inc.—R. S. Rubinstein.— Pagadero en Diciembre 15, 1920.—Firmado.—Bernardo Balle."

Eduardo Soler, la persona que está a cargo del departamento de cobros del banco demandante, declarando en el juicio dijo:

"A nuestro poder llegó un giro para el cobro de nuestra agencia de Nueva York, expedido por Edward Jolles & Co., Inc., a cargo de Bernardo Balle. El Sr. Balle aceptó el giro para pagarlo el 15 de diciembre. Al vencimiento le presentamos el giro al Sr. Balle y no lo pagó, y después de algunas semanas en vista de que no lo pagaba lo devolvimos a Nueva York. Luego la agencia de Nueva York nos lo devolvió diciendo que Balle tenía que pagarlo porque ellos no habían podido obtener el dinero. En vista de eso como Balle se negó a pagar lo entregamos al abogado para su cobro."

El demandado admite que aceptó el giro pero alega que lo pagó al tesorero de "Edward Jolles & Co., Inc." en San Juan, P. R., en enero de 1921.

En el acto del juicio presentó el demandado una deposi-

ción de Marris Aronowitz empleado que fué de "Edward Jolles & Co., Inc.", de Nueva York. En ella dice el testigo, al mostrársele el documento transcrito:

"Sí, me acuerdo de ello, nosotros salimos juntos del Banco con el Sr. Balle y Mr. Rubinstein para recoger un giro por la cantidad que representa ese cheque y los banqueros le dijeron que habían devuelto el giro. . . . . Cuando el Banco le manifestó a Balle que había devuelto el giro Mr. Rubinstein le dijo a Balle delante del testigo que le entregara el importe del giro que al llegar a Nueva York él le remitiría el giro."

Luego expresa el testigo que Rubinstein era "Secretario de dicha Corporación, (Edward Jolles & Co., Inc.), no estando seguro si desempeñaba el cargo de tesorero también."

La anterior deposición y la siguiente carta fueron las únicas pruebas del demandado:

"Hotel Trianón. — Consulado III. — Habana, Cuba. — June 3 de 1921.—Dear Mr. Balle:—

"As written to you in my previous letter I am now in Cuba on business for the firm. Consequently your letter had to be forwarded to me from New York and therefore the delay in answering.

"I was surprised to read that the Royal Bank of Canada had threatened to bring suit against you if you did not make payment to them of the item for $497.17—which adjustment was duly reported to the Edward Jolles Co. who in turn notified the bank.

"I have already written to New York requesting that this matter be immediately adjusted and as soon as sufficient time has passed for the exchange of letter believe that you will not be further troubled in this connection.

"Exceedingly regretting the inconvenience caused you by this misunderstanding and hoping that business is improving with you and that you are able to meet your obligations promptly, I beg to remain.

Very truly yours,,
(Signed) R. S. Rubinstein."

La corte tomó bajo su consideración el caso y el 28 de septiembre de 1923 lo falló declarando la demanda con lugar.

No conforme el demandado apeló, señalando como único

error el cometido por la corte, a su juicio, al apreciar la prueba y concluir que sostiene la demanda.

Los anteriores hechos demuestran que se trata de una letra de cambio expedida en Nueva York por "Edward Jolles Co., Inc." a favor de ellos mismos y contra el demandado. Que el librador recibió el importe del giro en Nueva York y lo endosó en blanco. Que el endoso no tiene fecha. Que el librado o sea el demandado aceptó en Puerto Rico la letra hallándose en poder del banco demandante y que en el acto del juicio dicho demandante introdujo la letra como prueba.

La primera cuestión a resolver es ¿qué ley es aplicable, la del estado de Nueva York o la del territorio de Puerto Rico?

"Surge la cuestión en relación con documentos negociables," dice Ruling Case Law, "con más frecuencia que en cuanto a cualquiera otra clase de contrato de si se hará referencia a la ley de un sitio o de otro al resolverse los derechos de las partes en dicho contrato. La cuestión se considera debidamente con relación al derecho particular o deber impuesto, pero algunos de los principios son de tal importancia general y aplicación que merecen citarse al empezar. Se dice que tres proposiciones han sido firmemente establecidas, a saber: 1. Todas las cuestiones relativas al otorgamiento, interpretación y validez de los contratos, incluyendo la capacidad de las partes para contratar, están determinadas por la ley del lugar donde el contrato se otorga; 2. Todas las cuestiones relacionadas con el cumplimiento, incluyendo la presentación, notificación, requerimiento, etc., están reguladas por la ley del lugar donde el contrato según sus términos ha de cumplirse; 3. Todas las cuestiones referentes al remedio que ha de seguirse, incluyendo el establecimiento de pleitos y el servicio de diligencias, dependen de la ley del lugar donde se establece la acción. Estas reglas han sido generalmente adoptadas por todas las cortes al resolver cuál es la ley que debe regir respecto a documentos extranjeros." 3 R.C.L 856–857.

De acuerdo con la ley del estado de Nueva York, la letra expedida a favor del propio librador es válida. "Generalmente," dice Ruling Case Law, tomo 3, página 877, "una letra de cambio tiene, primero, tres partes, el librador, el librado y la persona a quien ha de pagarse la letra. No es

raro, sin embargo, que el librador haga que una letra sea pagadera a su misma orden y entonces la endose y ponga en circulación.''

En cuanto al endoso, a juzgar por la jurisprudencia que sigue, rige también la ley del Estado de Nueva York.

"Las autoridades no están enteramente en harmonía en cuanto a si la validez del traspaso de un documento comercial ha de determinarse por la *lex loci contractus*, por la *lex loci solutionis*, o por *la lex fori*. La regla general es, toda vez que el endoso de una letra de cambio o pagaré es un contrato independiente, que la validez del endoso y la responsabilidad del endosante dependen de la ley del lugar donde se hace el endoso, y no de la ley del sitio donde la letra o pagaré ha de pagarse, o donde se establece la acción fundada en el mismo.'' 3 R.C.L. 966.

Siendo ello así, es necesario concluir que el endoso en blanco, sin fecha, es válido y trasmitió la propiedad de la letra al tenedor, el demandante, y, por tanto, que el pago hecho a otra persona que no sea el tenedor, o su representante debidamente autorizado, no extingue la obligación contraída por el deudor, que lo es en este caso el librado que aceptó pagar la letra. Art. 1130 del Código Civil Revisado.

"No es esencial ninguna fraseología particular para traspasar el título a una letra de cambio o pagaré en aquellos casos en que es necesario el endoso. Sólo la firma del que la traspasa es suficiente para el objeto.'' 3 R.C.L. 966.

"Un endoso en blanco consiste en la simple firma de la persona a quien ha de pagarse o el tenedor del documento. Una letra o pagaré endosado en blanco es transferible sólo por entrega y mientras continúe el endoso en blanco hace la letra o pagaré en efecto pagadero al portador.'' 3 R.C.L. 970.

"Un documento negociable endosado en blanco se presume que ha sido endosado de tal modo en el día de su fecha.'' 3 R.C.L. 971.

Véase también la Ley de Instrumentos Negociables. "Terry Uniform State Law Annotated,'' página 57 y siguientes y 8 C. J. 105 y siguientes.

Ahora bien, si se aplicara como pretende el apelante la "*lex loci solutionis*'' y por tanto se concluyera que la ley

de Puerto Rico es la que rige para fijar los efectos del endoso, surgiría la cuestión de si estando el endoso sin fecha no se entendía trasmitida al tenedor la propiedad, sino la simple comisión de cobranza. Esa misma cuestión surgió en el caso de *Noriega & Alvarez* v. *Cruz & Co. S. en C.,* de julio 14, 1924 (pág. 559), quedando abierta para ser decidida hasta que un caso de más importancia incitara "el interés de los abogados a hacer una investigación más acabada." No es éste en verdad "el caso de más importancia" que tenía en mente el Tribunal. Los abogados se limitan aquí a esbozar la cuestión y su decisión además no es necesaria para la resolución del litigio, porque aún aceptando que la propiedad no se hubiera trasmitido, siempre se concluiría que el banco demandante tenedor del documento estaba comisionado para su cobro por "Edward Jolles Co., Inc." y tenía autoridad para iniciar el pleito.

Todo entonces quedaría reducido a decidir si la prueba demostró o nó que el demandado pagó a "Edward Jolles Co., Inc."

De la deposición de Aronowitz y de la carta de Rubinstein, no surge de modo fehaciente, indiscutible, la autoridad de Rubinstein para percibir el importe del giro y por tanto el pago por el demandado a Rubinstein no puede considerarse como hecho a "Edward Jolles Co., Inc."

Bajo cualquier aspecto que se considere, pues, la cuestión, aplíquese la ley de Nueva York a la de Puerto Rico interpretada ésta en el sentido indicado, *procede la confirmación de la sentencia apelada.*